UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

ROBERT ANTHONY STROZEWSKI &            Case No. GK 11-00227
AMY JEAN STROZEWSKI,                    Chapter 7

     Debtors.

_____/

MICHELLE MCCURDIE,

     Plaintiff,                         Adv. Proc. No. 11-80211

v.

ROBERT ANTHONY STROZEWSKI,

     Defendant.

_____/

## OPINION REGARDING COLLATERAL ESTOPPEL EFFECT OF STATE COURT JUDGMENT IN NONDISCHARGEABLE DEBT ADVERSARY PROCEEDING

Appearances:

Terrence J. Lilly, Esq., Kalamazoo, Michigan, attorney for Michelle McCurdie, Plaintiff.

Thomas R. Betker, Esq., St. Joseph, Michigan, attorney for Robert Anthony Strozewski, Debtor-Defendant.

## I. INTRODUCTION.

Michelle McCurdie (the "Plaintiff") obtained a state court judgment against Robert Anthony Strozewski (the "Debtor") for actions taken by the Debtor in connection with the termination of the Plaintiff's employment at a Days Inn hotel in Kalamazoo, Michigan. After the Debtor filed for bankruptcy relief, the Plaintiff brought this adversary proceeding, seeking a determination that the debt owed to her under the state court judgment is

nondischargeable under § 523(a)(6) of the Bankruptcy Code.[1] For the reasons that follow, the court holds that the state court judgment is entitled to collateral estoppel effect in this adversary proceeding.  Because the state court judgment conclusively establishes the elements required to except a debt from discharge under § 523(a)(6), the Plaintiff's motion for summary judgment on her nondischargeability complaint shall be granted.

## II. JURISDICTION.

This court has jurisdiction over this bankruptcy case.  28 U.S.C. §§ 1334.  The case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a); Local Rule 83.2(a) (W.D. Mich.).   This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (determinations regarding dischargeability of a debt). Notwithstanding a recent Supreme Court decision, Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594 (2011), this court is constitutionally authorized to enter a final order.  See Tibble v. Wells Fargo Bank, N.A. (In re Hudson), __ B.R. __, 2011 WL 3583278, *7-8 (Bankr. W.D. Mich. Aug. 16, 2011) (the Stern decision is extremely narrow; "[e]xcept for the types of counterclaims addressed in Stern v. Marshall, a bankruptcy judge remains empowered to enter final orders in all core proceedings").

## III. UNCONTESTED FACTS.

The facts in this adversary proceeding are undisputed.  The Plaintiff worked as a front desk clerk at a Days Inn hotel in Kalamazoo, Michigan, which was managed and

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive. The specific provisions of the Bankruptcy Code are referred to herein as "§ ___."

operated by Prudent Lodging of Kalamazoo, LLC ("Prudent Lodging"). (Plf. Motion, Exh. A, ¶ 7-8.)[2]  The Debtor was the Operations Manager of Prudent Lodging. (Id. at ¶ 9.)

In the course of her employment, the Plaintiff repeatedly advised the Debtor and Hiresh K. Patel, Prudent Lodging's Operating Member, about health and safety concerns at the Days Inn. (Id. at ¶ 10.) These concerns included leaks in the roof, mold, a disabled fire alarm, uncovered electrical boxes, improper storage and labeling of chemicals, and improper food refrigeration. (Id.) When the Debtor and Patel failed to take action to correct the health and safety issues identified by the Plaintiff, she contacted the Michigan Bureau of Safety and Regulation ("MIOSHA") to inquire about filing a complaint. (Id. at ¶ 13.) The Plaintiff ultimately filed a Notice of Alleged Safety Hazards with MIOSHA, by faxing the notice from a machine at a friend's workplace, Great Northern Century Company. (Id. at ¶ 15.)

As a result of the Plaintiff's actions, her employment with Prudent Lodging was terminated. (Id. at ¶ 16.) The Plaintiff was informed of her termination during a meeting with the Debtor. (Id.) After the Plaintiff attempted to read her dismissal notice, the Debtor threatened to call the police if she did not leave the hotel premises immediately. (Id. at ¶ 17.) The Debtor also refused to allow the Plaintiff to gather her personal possessions. (Id. at ¶ 18.) Instead, he and a co-worker escorted the Plaintiff through the front door of the Days Inn and off the hotel property. (Id.)

---

[2] The Plaintiff's Motion for Summary Judgment (AP Dkt. No. 13) and its exhibits are cited herein as "Plf. Motion, Exh. ___." Citations to the Defendant's Response to the Motion for Summary Judgment (AP Dkt. No. 15) are denoted as "Dft. Response, Exh. ___."

3

After terminating the Plaintiff's employment, the Debtor also contacted the Great Northern Century Company to demand a copy of the faxed Notice of Alleged Safety Hazards. (Id. at ¶ 19.) Impersonating a state inspector, the Debtor threatened to subpoena the document if the employees of Great Northern Century Company did not comply with his demands. (Id.)

On January 15, 2008, the Plaintiff filed a complaint against the Debtor and Patel in the Kalamazoo County Circuit Court. (Plf. Motion, Exh. A.) The Plaintiff's state court complaint alleged three causes of action: (1) intentional infliction of emotional distress; (2) tortious interference with an employment relationship; and (3) civil conspiracy. (Id.) The Debtor, through counsel, filed an answer to the complaint on February 26, 2008. (Dft. Resp., Exh. B.)

After the Debtor participated in discovery, filed two unsuccessful motions for summary disposition, and attended a case evaluation mediation, the Debtor's attorney withdrew as counsel. (Plf. Motion, Exh. D.) Thereafter, the Debtor abandoned his defense in the state court litigation. (Id.)

When the Debtor failed to appear for a court-ordered settlement conference, the state court entered a default order on August 4, 2009. (Plf. Motion, Exh. B.) A trial to determine damages was held on September 9, 2009, and a final civil judgment for $592,394.47 was entered against the Debtor and Patel on October 9, 2009 (the "state court judgment"). (Plf. Motion, Exh. C.) The state court judgment does not identify the cause, or causes, of action on which it is based and, aside from stating separate amounts

4

for costs, mediation sanctions, and interest, does not specify the basis for its monetary award.[3] (Id.)

On January 11, 2011, the Debtor and his wife filed a joint voluntary petition under chapter 7 of the Bankruptcy Code. The Plaintiff filed this adversary proceeding on May 3, 2011, alleging that the state court judgment was based on the Debtor's "willful and malicious" conduct and that the resulting judgment debt should be excepted from the Debtor's discharge under § 523(a)(6). On June 9, 2011, the Plaintiff filed a motion for summary judgment, asserting that the state court judgement is entitled to collateral estoppel effect in this adversary proceeding. The court heard oral argument on the motion on August 19, 2011. At the conclusion of oral argument, the court took the motion under advisement.

## IV. ISSUE.

The issue presented is whether the state court judgment is entitled to collateral estoppel effect in this adversary proceeding. To answer this general question, the court must consider whether the state court judgment was "actually litigated," even though it was entered by default, after the Debtor failed to appear at the settlement conference. Because the state court complaint asserted multiple causes of action, and the state court judgment fails to identify the ground, or grounds, on which it is based, this court must also ascertain which issues were "necessarily determined" by the judgment. Finally, this court

---

[3] The parties have informed this court that transcripts of the state court default hearing and the trial on damages were not prepared. (See Statement on State Court Transcript, AP Dkt. No. 20.)

5

must determine whether the issues decided by the state court compel the conclusion that the judgment debt should be excepted from discharge under § 523(a)(6).

## V.  DISCUSSION.

### A.  Summary Judgment Standard.

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, states that a court shall enter summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1996).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (citation omitted).

### B.  § 523(a)(6) – Willful and Malicious Injury.

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The statute requires that the alleged injury be *both* willful and malicious for a debt to be nondischargeable.  Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 463 (6th Cir. 1999).

6

The Supreme Court has held that a finding of willfulness under § 523(a)(6) requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998) (emphasis in original). The Sixth Circuit has interpreted this requirement to mean that a willful injury is one where the debtor "desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it." In re Markowitz, 190 F.3d at 464 (quoting Restatement (Second) of Torts § 8A (1964)). This "formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." Kawaauhau, 523 U.S. at 61, 118 S. Ct. at 977. Accordingly, debts arising out of misconduct such as intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel and deliberate vandalism of a creditor's premises have been held to satisfy the willful and malicious injury standard under § 523(a)(6). Steier v. Best (In re Best), 109 F. App'x 1, 5 (6th Cir. June 30, 2004) (unpublished opinion) (citations omitted); National Sign & Signal v. Livingston, 422 B.R. 645, 658 (W.D. Mich. 2009).

The second statutory requirement, that the injury be "malicious," is met when a debtor acts "in conscious disregard of [his or her] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986); Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298, 308 (Bankr. 6th Cir. 2004). The Plaintiff, as the party seeking to except the debt from discharge, bears the burden of proving both of these requirements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991).

7

C. *Preclusive Effect of State Court Judgment.*

The determination of whether a particular debt should be excepted from discharge under § 523(a)(6) is a legal conclusion which is within the exclusive jurisdiction of the bankruptcy courts. See 11 U.S.C. § 523(c). Accordingly, *res judicata*, or claim preclusion, does not bar the bankruptcy court from deciding the issue of whether a debt is dischargeable, even when similar issues have already been decided by a state court of competent jurisdiction. Brown v. Felsen, 442 U.S. 127, 138-39, 99 S. Ct. 2205, 2212-13 (1979); Spilman v. Harley, 656 F.2d 224, 227 (6th Cir. 1981); cf. Matter of Redburn, 193 B.R. 249, 258 (Bankr. W.D. Mich. 1996) (noting that a prior state court judgment is entitled to *res judicata* effect as to the *amount* of the debt; although "the ultimate issue of nondischargeability remains undecided in the related chapter 7 case, the *amount* of the debt was fixed by the state court judgment and that judgment is binding on this court") (citing Rally Hill Prods., Inc. v. Bursack (In re Bursack), 65 F.3d 51, 53 (6th Cir. 1995)) (additional citations omitted) (emphasis in original).

By contrast, the doctrine of colllateral estoppel, or issue preclusion, does apply in bankruptcy dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 n. 11 (1991); Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315, 318 (6th Cir. 1997). As a result, where there has been a prior state court judgment, the bankruptcy court's ultimate dischargeability determination will be governed by any factual issues that were actually and necessarily decided by the state court. See Spilman, 656 F.2d at 227-28 (The fact that "Congress intended the bankruptcy court to determine the final result [of] dischargeability or not does not require the bankruptcy court to redetermine all the underlying facts." When the requirements are met, "collateral estoppel should

8

preclude relitigation of factual issues."); Phillips v. Weissert (In re Phillips), 434 B.R. 475, 485 (Bankr. 6th Cir. 2010) ("Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments.") (quoting Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987)); Vogel v. Kalita (In re Kalita), 202 B.R. 889, 894 (Bankr. W.D. Mich. 1996) (citing Grogan, 498 U.S. at 284 n.11, 111 S. Ct. at 658 n.11).

When applying collateral estoppel, the bankruptcy court must give a prior state court judgment the same preclusive effect that judgment would have in the state court, unless the Full Faith and Credit Statute, 28 U.S.C. § 1738, provides an exception. See Migra v. Warren City School District Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984) ("a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"); In re Calvert, 105 F.3d at 317. Because the state court judgment in this case was rendered by a Michigan state court, this court must give the judgment the same preclusive effect that any Michigan court would give the judgment.

Under Michigan law, collateral estoppel precludes re-litigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding resulted in a valid, final judgment and the issue was (1) actually litigated and (2) necessarily determined. People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990). In this adversary proceeding, there is no dispute that the state court litigation involved the same parties or that the state court entered a valid, final judgment. The only question is whether

the issues regarding the Debtor's asserted "willful and malicious" conduct were "actually litigated" and "necessarily determined" by the state court.

### 1.  *Was the State Court Judgment "Actually Litigated?"*

The Debtor argues that the relevant factual and legal issues were not "actually litigated" in the state court because the state court judgment was entered as a result of his failure to appear at the settlement conference rather than after a trial on the merits.  This court has previously held that "true default" judgments, i.e., those entered after the defendant fails to file an answer or otherwise defend in the state court action, do not meet the "actually litigated" requirement and are not entitled to collateral estoppel effect under Michigan law.  In re Kalita, 202 B.R. at 913.  In a recent decision, the Bankruptcy Appellate Panel for the Sixth Circuit has also held that a true default judgment is not entitled to preclusive effect in a subsequent nondischargeability action.  In re Phillips, 434 B.R. at 486-87 (applying Michigan law, state court judgment should be given collateral estoppel effect "only where there is sufficient participation by the parties to meet the actually litigated requirement;" requirement was not met when defendants never filed an answer or participated in the lawsuit prior to the entry of judgment against them).

But the state court judgment in this adversary proceeding is *not* a "true default."  Here, the Debtor retained an attorney in the state court action,[4] filed an answer,

---

[4] The Debtor argues that the attorney in the state court action was retained and paid by his co-defendant, Patel.  As a result, the Debtor claims that his actual defense to the Plaintiff's assertions – i.e., that Patel ordered him to fire the Plaintiff – was not presented in the pleadings filed by the attorney in the state court.  The Debtor asserts that this makes the state court judgment more closely resemble a "true default" because the attorney did not actively pursue the Debtor's case.

participated in discovery, attended mediation, and filed two motions for summary disposition. This court finds that these actions constitute more than sufficient participation in the state court action to satisfy the "actually litigated" requirement. See Kasishke v. Frank (In re Frank), 425 B.R. 435, 440-41 (Bankr. W.D. Mich. 2010) (state court judgment, which was entered as a sanction for debtor-defendant's failure to participate in lawsuit, was entitled to preclusive effect when debtor-defendant answered complaint and only abandoned defense after his attorney withdrew as counsel); Bldg. Comm., Inc. v. Rahaim (In re Rahaim), 324 B.R. 29, 37-38 (Bankr. E.D. Mich. 2005) (defendant participated sufficiently in state court action by retaining counsel, filing an answer and counterclaim, and participating in discovery; accordingly, default judgment for failure to appear at hearing to determine damages was not a "true default" and was entitled to preclusive effect); Robinson v. Callender (In re Callender), 212 B.R. 276, 280 (Bankr. W.D. Mich. 1997) (state court judgment entered against defendant was not "true default" because defendant filed an answer to the state court complaint; defendant also "substantially participated" in the state court litigation by attending depositions and a pretrial conference up until the eve of trial; therefore, judgment was entitled to preclusive effect in nondischargeability adversary proceeding).

---

This argument is without merit. The attorney in the state court action filed an appearance, signed the answer, filed two motions for summary judgment, and took other actions as counsel for both Patel and the Debtor. Under these circumstances, the attorney is presumed to be acting on behalf of the Debtor. See generally Jackson v. Fitzgerald, 67 N.W.2d 471, 472 (Mich. 1954) (the "attorney who has the conduct of a law suit is presumed to have authority to act on his client's behalf"). If the Debtor had concerns about the attorney's representation or potential conflict of interest, he should have raised those concerns in the state court action. The Debtor's arguments about the quality of representation are not relevant to this court's analysis of whether the issues were "actually litigated" in the state court.

11

## 2. *What Issues Were "Necessarily Determined" by the State Court Judgment?*

Next, this court must determine whether the issues that would support a finding of nondischargeability under § 523(a)(6) were "necessarily determined" by the state court judgment. Under Michigan law, "[a]n issue is necessarily determined only if it is 'essential' to the judgment." People v. Gates, 452 N.W.2d at 631 (citation omitted). In this case, the Plaintiff's state court complaint asserted three causes of action: intentional infliction of emotional distress, tortious interference with an employment relationship, and civil conspiracy. The state court did not specifically identify which of these three grounds it relied upon in entering its default judgment. As such, the state court judgment appears to be based on alternative theories of liability. See In re Frank, 425 B.R. at 440. This court must determine which of the Plaintiff's alternative theories of liability were essential to and necessarily decided by the state court judgment.

There is a split of authority as to whether alternative, independently sufficient grounds are necessary to a judgment for purposes of applying collateral estoppel. See generally 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4421 (2d ed. 1987). "Traditional analysis has viewed this situation as a dilemma between two choices – preclusion must be available as to each of the independently sufficient findings, or it must be denied as to all." Id. (discussing federal law on issue preclusion). The Michigan Supreme Court has not directly stated whether alternative grounds are considered essential to a judgment for purposes of collateral estoppel. Therefore, this court must predict "what the [Michigan] Supreme Court would do if it were confronted with [that] question." Combs v. International Ins. Co., 354 F.3d 568, 577 (6th Cir. 2004) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)) (additional citations

12

omitted).   In making this prediction, this court may consider "state appellate court decisions, Supreme Court dicta, restatements of law, law review commentaries, and the majority rule among other states." Word Investments, Inc. v. Bruinsma (In re TML, Inc.), 291 B.R. 400, 436 (Bankr. W.D. Mich. 2003) (quoting Garden City Osteopathic Hosp. v. HBE Corp., 55 F.3d 1126, 1130 (6th Cir. 1995)) (internal quotation marks omitted).

A recent decision authored by another judge of this bankruptcy court, Judge Dales, provides a thoughtful and persuasive analysis of Michigan law on this precise issue. See In re Frank, 425 B.R. at 440-42.  The facts in Frank were strikingly similar to the facts in the present adversary proceeding.  A state court judgment was entered against the debtor as a "discovery sanction" after the debtor abandoned his defense in the lawsuit.  The judgment did not state which counts of the state court complaint it was based on.  This was problematic in the subsequent adversary proceeding, because some counts of the complaint involved intentional torts which would have supported a finding of nondischargeability under § 523(a)(6) and some involved negligent acts which would not have.

In Frank, Judge Dales began his analysis by noting that, like many authorities, the first and second Restatements of the law of judgments advocate differing approaches to the question. A comment in the Restatement (Second) of Judgments states that when a judgment is based on alternative grounds, "courts should not extend preclusion to either alternative holding because such holdings are by definition not necessary to a judgment." In re Frank, 425 B.R. at 441 (citing Restatement (Second) of Judgments § 27 cmt. i (1982)).  This is directly contrary to a comment in the First Restatement, which provides that when a "judgment is based upon the matters litigated as alternative grounds, the

13

judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment." Restatement (First) of Judgments § 68 cmt. n (1942).

The Frank court concluded that the rule articulated in the First Restatement has "found favor" in the majority of Michigan cases to have addressed the issue. See, e.g., Sheldon Co. Profit Sharing Plan & Trust v. Smith, 858 F. Supp. 633, 669 (W.D. Mich. 1994) (according "preclusive effect to each of a set of alternative grounds for a single judgment"); In re Callender, 212 B.R. 276, 282 (Bankr. W.D. Mich. 1997) (when state court judgment explicitly states that the defendant was found liable on all counts of a multi-count complaint, "each and every count is entitled to collateral estoppel effect" in a subsequent adversary proceeding); Amalgamated Transit Union, Local 1564, AFL-CIO v. Southeastern Michigan Transportation Authority, 473 N.W.2d 249, 255 (1991) (noting that a judgment that rests of two grounds, which are each "independently adequate to support it," is "conclusive as to both;" but concluding that alternative holding of trial court was not entitled to preclusive effect when it was not addressed on appeal); Dobrowski v. Jay Dee Contractors, Inc., 2010 WL 293069, *4 (Mich. App. Jan. 26, 2010) (unpublished opinion) (applying federal preclusion law and holding that "collateral estoppel extends to alternative grounds for a prior decision"). This court agrees with the well-reasoned analysis and conclusion in In re Frank. Michigan case law, while not directly on point, expresses a preference for the rule set forth in the First Restatement. Affording preclusive effect to multiple grounds for a prior judgment is also consistent with the general purposes of collateral estoppel, which include "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and, by preventing inconsistent decisions, encourag[ing] reliance on adjudication." Transnation Title Ins. Co. v. Livingston (In re

14

Livingston), 368 B.R. 610, 621 (Bankr. E.D. Mich. 2007), aff'd, 372 F. App'x 613 (6th Cir. Apr. 9, 2010) (quoting City of Detroit v. Qualls, 454 N.W.2d 374, 382 n. 30 (Mich. 1990)). Accordingly, the court holds that, under Michigan law, each count of the Plaintiff's complaint was "necessarily decided" by the state court judgment.

## D. *Does the State Court Judgment Establish that the Debt is Nondischargeable?*

Finally, having determined that all three causes of action asserted by the Plaintiff were necessarily decided by the state court and are entitled to preclusive effect, this court must consider whether the issues adjudicated by the state court establish that the Debtor's conduct was willful and malicious under § 523(a)(6). By entering its judgment, the state court implicitly determined that the Plaintiff had established all of the elements of each cause of action pled in her complaint. See Wood v. Detroit Automobile Inter-Insurance Exchange, 321 N.W.2d 653, 656 (Mich. 1982) ("It is an established principle of Michigan law that a default settles the question of liability as to well-pleaded allegations . . . .") (citations omitted). As a result, the findings that supported each count of the complaint are entitled to preclusive effect in this adversary proceeding. Because the state court judgment is based on all three causes of action asserted by the Plaintiff, this court need only determine if the state court's findings on any *one* of the causes of action establish that the Debtor's conduct was willful and malicious.

Of the three bases for the state court judgment, the conclusion that the Debtor was liable to the Plaintiff for intentional infliction of emotional distress provides the most direct support for the Plaintiff's nondischargeability action. When the state court entered its judgment on the Plaintiff's claim for intentional infliction of emotional distress, it necessarily

15

determined that the plaintiff had established four elements: "'(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.'" Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 908-09 (Mich. 1985) (identifying the elements required to support a claim for intentional infliction of emotional distress without formally recognizing the tort under Michigan law); Hayley v. Allstate Ins. Co., 686 N.W.2d 273, 276 (Mich. App. 2004) (quoting Graham v. Ford, 604 N.W.2d 713, 716 (Mich. App. 1999)). The first element is established what the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Roberts, 374 N.W.2d at 908-09 (quoting Restatement (Second) Torts § 46 cmt. d, at 72-73 (1965)). The requisite intent or recklessness exists when the plaintiff demonstrates that "the defendant specifically intended to cause . . . [her] emotional distress or that the defendant's conduct was so reckless that any reasonable person would know that emotional distress would result." Goins v. City of Detroit, 408 F.Supp.2d 387, 396 (E.D. Mich. 2005) (quoting Lewis v. LeGrow, 670 N.W.2d 675, 689 (Mich. App. 2003)) (internal quotation marks omitted).

As evidenced by these definitions, the elements required to prove a claim for intentional infliction of emotional distress under Michigan law very closely resemble the elements needed to establish a willful and malicious injury for purposes of § 523(a)(6). Although, as the Debtor points out, the state court's determination of liability may have been premised on the Debtor's intentional *or* reckless conduct, either finding is sufficient to establish "willfulness" under § 523(a)(6). Under Michigan law, the state court judgment establishes that the Debtor either intended to cause the Plaintiff's emotional distress or that

16

the Debtor's conduct was so reckless that a reasonable person would know that emotional distress would result. This definition is nearly identical to the level of intent required in the Sixth Circuit for a finding of willfulness under § 523(a)(6). Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 463 (6th Cir. 1999) (a willful injury is one where the debtor "desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it"). The state court's finding that the Debtor's conduct was "extreme and outrageous" also establishes that the Debtor's actions toward the Plaintiff were "malicious." Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986) (malicious means "in conscious disregard of [his or her] duties or without just cause or excuse"); see Gonzalez v. Moffitt (In re Moffitt), 252 B.R. 916, 923 (Bankr. 6th Cir. 2000) (holding that finding of "extreme and outrageous" conduct under Ohio law for intentional infliction of serious emotional distress established, "at a minimum," that the debtor acted in "conscious disregard" of his duties to the plaintiff). Thus, the state court judgment for intentional infliction of emotional distress necessarily compels the conclusion that the elements of "willful and malicious" injury under § 523(a)(6) are met.[5]

## VI. CONCLUSION.

For the foregoing reasons, this court concludes that the state court judgment is entitled to preclusive effect in this adversary proceeding. The findings that support the state court judgment for intentional infliction of emotional distress also compel the

---

[5] This court notes that the state court damages award appears to be very substantial. However, the doctrine of *res judicata* prevents the court from revisiting the award. See Section V.C. above.

17

conclusion that the Debtor's conduct was willful and malicious. Therefore, the Plaintiff's motion for summary judgment is GRANTED and the state court judgment is nondischargeable under § 523(a)(6). A separate judgment shall be entered accordingly.

Dated this 18th day of October, 2011
at Grand Rapids, Michigan

Honorable James D. Gregg
Chief United States Bankruptcy Judge

18